IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| POWER MARKETING DIRECT, INC., : | |
| : | |
| Plaintiff, : | Case No. 2:05-CV-767 |
| : | |
| v. : | JUDGE ALGENON L. MARBLEY |
| : | |
| JIMMIE CLARK, : | Magistrate Judge Abel |
| : | |
| Defendant. : | |

**OPINION AND ORDER**

**I. INTRODUCTION**

This matter comes before the Court on Defendant, Jimmie Clark's ("Defendant" or "Clark"), Motion to Dismiss Counts One through Three of Power Marketing Direct, Inc.'s ("Plaintiff" or "PMD") complaint. Defendant claims that Counts One through Three of Plaintiff's complaint fail to state a claim on which relief can be granted. For the reasons set forth herein, the Court **GRANTS** Defendant's Motion to Dismiss.

**II. STATEMENT OF FACTS**

**A. Background**

Plaintiff, PMD, operates a business selling furniture and bedding through a nationwide network of manufacturers and dealers. PMD considers its sales and marketing methods and its industry contacts to be valuable intellectual property. PMD licensees gain access to this information only after signing a License Agreement ("Agreement"), which contains a covenant not to compete (the "Non-Compete"), prohibiting them from competing with PMD for a period of three years after the termination of the Agreement. The Agreement also includes a choice-of-law-and-forum clause

providing that Ohio law will govern and that any claims arising under the Agreement will be heard in Franklin County, Ohio.

Defendant started a wholesale mattress business in Texas in December 2000. On or about March 19, 2001, Defendant signed an Agreement with PMD to become the company's exclusive licensee in the Austin, Texas metropolitan area through March 2011. Defendant terminated his relationship with PMD in April, 2005. Plaintiff now asserts that Defendant solicited other PMD dealers and vendors to terminate their relationships with PMD in direct violation of the Non-Compete.

### B. Procedural History

PMD filed suit in the Franklin County Court of Common Pleas on August 12, 2005, asserting the following claims: (1) Count One - Breach of Contract; (2) Count Two - Violation of Ohio's Uniform Trade Secrets Act ("UTSA"); (3) Count Three - Tortious Interference with Contractual and Business Relationships; (4) Count Four - Amounts Due on Account.

Defendant filed a Notice of Removal to federal court on August 12, 2005. Subsequently, on September 8, 2005, Defendant filed the present Motion to Dismiss Counts One through Three pursuant to Federal Rules of Civil Procedure 12(b)(6). The matter has been fully briefed and is now ripe for decision.

### III. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) is designed to test "whether a cognizable claim has been pleaded in the complaint." *Scheid v. Fanny Farmer Candy Shops, Inc.* 859 F.2d 434, 436 (6th Cir. 1988). In considering such a motion, the Court is limited to evaluating whether a plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action. *Windsor v.*

*The Tennessean,* 719 F.2d 155, 158 (6th Cir. 1983). Dismissal under Rule 12(b)(6) streamlines litigation by "dispensing with needless discovery and fact-finding" on claims that are legally untenable in the first place. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

All factual allegations made by a plaintiff are deemed admitted and ambiguous allegations must be construed in his favor. *Murphy v. Sofamor Danek Gp., Inc.,* 123 F.3d 394, 400 (6th Cir. 1997). A complaint should not be dismissed under Rule 12(b)(6) "'unless it appears beyond doubt that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While the complaint need not specify every detail of a plaintiff's claim, it must give the defendant "'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (quoting *Conley*, 355 U.S. at 47).

Nonetheless, this liberal standard of review does require more than the bare assertion of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Under the federal pleading requirements, a plaintiff's complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* FED. R. CIV. PRO. 8(a)(2). The short and plain statement must "give the defendant fair notice of what plaintiff's claim is, and the grounds upon which it rests." A complaint must contain either direct or inferential allegations with respect to all the material elements necessary to sustain a recovery under some viable legal theory. *Id*. (citations omitted).

## IV. ANALYSIS

### A. Count One - Breach of Contract & the Non-Compete

**1. Whether Defendant Agreed to the Non-Compete**

As a threshold matter, the parties disagree about whether Defendant consented to the terms of the Non-Compete. The signature page of the Agreement provides separate lines for the signature of both the "PMD President," and the "Licensee." *See* Ex. A ("Agreement") at 9. Beneath those lines, is a separate section reading "individually as to Section 19 (Covenant Not to Compete) only," which is followed by one large signature line, and a number of smaller lines.

Defendant asserts that though he signed the overall Agreement, thereby manifesting his consent to its terms, because he did not also sign the signature line marked "individually as to section 19 (Covenant Not to Compete) only," he cannot now be bound by the terms of the Non-Compete. As evidence that Plaintiff treats its Non-Compete separately from the rest of the Agreement, Defendant points to the Agreement at issue in two other cases before this Court, *Power Marketing Direct v. Bryce Ball,* Case No. C2-03-1001 (S.D. Ohio June 28, 2004) (unpublished) (Marbley, J.), and *Power Marketing Direct v. Pagnozzi*, Case No. C2-05-766 (S.D. Ohio Aug. 12, 2005) (unpublished) (Sargus, J.), in which the defendants signed both the PMD Agreement and the Non-Compete section separately. Plaintiff counters that the signature line is reserved for additional employees or associates of the licensee who must agree to be bound by the Non-Compete, but need not be bound by the many other terms of the Agreement (such as the provisions regarding payment, inventory, performance, etc.). Plaintiff argues that its interpretation is supported by the last sentence of the Non-Compete, which directs the prospective licensee to have each of its employees agree to the Non-Compete in writing within thirty days of their employment. Ex. A ¶ 19.

This Court finds plausible PMD's explanation that the numerous signature lines set forth below the Non-Compete section are intended to be signed by the licensee's employees, not the

licensee himself. Because PMD indisputably values its proprietary information, it is logical that the company would seek to bind both licensees and their employees to the Non-Compete. The parties' dispute over whether Defendant actually consented to the terms of the Non-Compete presents a question of material fact that cannot be resolved at this stage of the litigation. Thus, construing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has pled facts suggesting that Defendant consented to the Non-Compete sufficient to survive a motion to dismiss.[1]

### 2. Whether the Non-Compete is Enforceable Under Ohio Law

The Court must next consider the parties' dispute regarding the enforceability of the Agreement, including the Non-Compete. Federal courts sitting in diversity apply the forum state's rules for conflicts of law. *Rosen v. Chrysler Corp.*, 205 F.3d 918, 921 (6th Cir. 2000); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Though the parties do not contest that Ohio's choice-of-law rules apply, they do, however, dispute the result of the application.

Plaintiff asserts that Ohio law supports enforcing the choice-of-law selected by the parties to an agreement. Specific to the Non-Compete, Plaintiff argues that Ohio law enforces non-

---

[1] Further, the Court notes that even if Defendant did not sign the Non-Compete section separately, he could have impliedly agreed to its terms. The elements of a contract are "an offer and acceptance supported by valid consideration." *See Sashti, Inc. v. Glunt Ind., Inc.*, 140 F. Supp. 2d 813, 816 (N.D. Ohio 2001). Acceptance may be expressed by "word, sign, writing, or act"; thus, a written contract can be valid even though one party to the contract has not signed it if that party has otherwise demonstrated through his conduct that he has assented to its terms. *See Power Marketing Direct v. Alan Ball*, Case No. C2-05-00767 (S.D. Ohio Sept. 8, 2005) (Graham, J.) (unpublished) (hereinafter *"Alan Ball"*) (dismissing PMD's breach of contract claims because defendant, former PMD licensee in Utah, had signed the separate section for the Non-Compete, but had failed to sign the overall Agreement, and because PMD had failed to plead facts showing the existence of a contract) (citing *Klonowski v. Monczewki*, 142 N.E. 368 (Ohio 1924)). It is undisputed that Defendant was a PMD licensee with access to PMD's proprietary information for approximately four years, but it defies logic that PMD would allow Defendant to maintain its licensee status if Defendant had, as he suggests, expressly refused to consent to the terms of the Non-Compete. Thus, Defendant's failure to sign the Non-Compete alone will not likely defeat Plaintiff's breach of contract claim.

competition agreements that are reasonable, meaning that the agreement has terms that are no greater than what is required for the protection of the employer, do not impose an undue hardship on the employee, and are not injurious to the public. Defendant counters that this case falls within an exception to the general rule. Even under Ohio law, a choice-of-law provision is not applied if: (1) application of the chosen state's law would be contrary to the fundamental public policy of another state having a greater or material interest in the issue than the chosen state; and (2) such state would have been the state applicable law in the absence of a choice-of-law provision. According to Defendant, Texas is such a state.

To decide whether to honor a party's choice-of-law provision, Ohio looks to § 187 of the Restatement (Second) of Conflict of Laws. *Schulke Radio Prods. Ltd. v. Midwestern Broad. Co.*, 453 N.E.2d 683, 685-86 (Ohio 1983). The Restatement provides:

> (2) [t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied. . . unless either
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties['] choice, or
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice-of-law by the parties.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (1989).

In the present case, Plaintiff is an Ohio corporation. Ohio, therefore, has a substantial relationship to the transaction, and § 187(2)(a) is satisfied. Hence, the question becomes whether § 187(2)(b) is applicable and would bar enforcement of the Non-Compete. The answer depends on whether the laws of Texas govern the case without the choice-of-law provision, whether application of the Non-Compete violates a fundamental public policy of Texas, and whether Texas has a

materially greater interest in the application of the Non-Compete than Ohio.

### a. What State's Law Governs Absent the Agreement's Choice-of-law Provision

Without the choice-of-law provision, the law of the state with "the most significant relationship to the transaction and the parties" controls. *Russell v. GTE Gov't Sys. Corp.*, 232 F. Supp. 2d 840, 848 (S.D. Ohio 2002) (citing *Carr v. Isaacs*, 2002 WL 553715, at *3 (Ohio App. Apr. 15, 2002)). To evaluate the significance of a state's relationship to the transaction, Ohio has adopted § 188 of the Restatement of Laws 2d on Conflict of Laws. *See Gries Sports Enterprises, Inc. v. Modell*, 473 N.E.2d 807, 810 (Ohio 1984). Section 188(2) directs courts to consider five factors: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Russell*, 232 F. Supp. 2d at 849 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2) (1989)).

The places of contracting and negotiation are not clear from the pleadings. Plaintiff asserts that the Agreement was signed in Ohio while Defendant counters that Plaintiff mailed him the Agreement, and he signed it in Texas. Further, the record is devoid of evidence that the parties engaged in negotiations regarding the specific terms of what appears to be a boilerplate agreement. Hence, the Court will look to the other relevant factors.

Texas is both the place of performance and the location of the subject matter of the Agreement. Under the terms of the Agreement, Defendant became the exclusive PMD licensee in the Austin, Texas metropolitan area; Defendant's warehouse was maintained in Texas; Defendant's customers were Texas residents; and Defendant was a resident of Texas for the duration of the time he served as a PMD licensee. The subject matter of the Agreement was Plaintiff's business

methodology. Defendant used this methodology while conducting business in Texas. As part of the methodology, Defendant would call Plaintiff in Ohio to place furniture orders and send payments to Plaintiff in Ohio. The furniture, however, was shipped directly from the vendors to Defendant, and no furniture was shipped from Ohio. Further, a part of Plaintiff's methodology was managing warehouse inventory. Because Defendant's warehouse was located in Texas, the use of Plaintiff's warehouse management methodology occurred there as well. In this case, the domicile, residence, place of incorporation, and places of business of the parties weighs in favor of neither party. Plaintiff is an Ohio corporation with its place of business in Ohio. Defendant is a resident of Texas with his place of business in Texas.

After reviewing all of the factors set forth in § 188(2), absent the choice-of-law provision, the only factor that favors the application of Ohio law is the fact that the place of contracting was in Ohio. All other factors weigh either in favor of applying Texas law or in favor of neither party. Therefore, the Court finds that Texas has a more substantial relationship to the Agreement such that Texas law would govern absent a valid choice-of-law provision.

### b. Whether Enforcement of the Covenant Would be Contrary to a Fundamental Policy of Texas

A "fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 cmt. g (1989). The state legislature codified Texas' fundamental policy regarding covenants not to compete within the Texas Business and Commerce Code, which provides that "a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made." TEX. BUS. & COM. CODE ANN. § 15.50(a) (2005). Courts in Texas, including the Texas Supreme

Court, have repeatedly found that the state's non-competition law constitutes a fundamental policy of Texas. *See, e.g. DeSantis v. Wackenhut*, 793 S.W.2d 670, 679 (Tex. 1990).

> According to Section 15.50(a) of the Texas Code,
>
> Notwithstanding Section 15.05 [which generally declares restraints on competition unlawful] of this code, a covenant not to compete is enforceable if it is *ancillary to or part of an otherwise enforceable agreement at the time the agreement is made* to the extent that it contains limitations as to time, geographic area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promise.

*See* TEX. BUS. & COM. CODE ANN. § 15.50(a) (emphasis added). In its most recent consideration of the foregoing statutory requirement, the Texas Supreme Court held that to be considered "ancillary to an otherwise enforceable agreement," it is not enough to show that the parties have entered into some sort of "enforceable" agreement. *Light v. Centel Cellular Co.*, 883 S.W.2d 642, 647 (Tex. 1994). Rather, to satisfy this test, the party wishing to enforce a covenant against competition must show that: "(1) the consideration given by the employer in the otherwise enforceable agreement [gave rise] to the employer's interest in restraining the employee from competing; and (2) the covenant [is] designed to enforce the employee's consideration or return promise in the otherwise enforceable agreement." *Id*. (citation omitted).

In *Light*, the Texas Supreme Court held that the covenant in question failed the above ancillary requirement. *See* 883 S.W.2d at 648. In *Light*, employee, Light, sued her former employer claiming, among other things that the covenant not to compete she had signed at the start of her employment was void and unenforceable. *Id*. at 643. The parties' at-will employment agreement contained a non-illusory promise by the employer to provide "specialized training" to Light immediately, but the contract did not contain a return promise by Light that she would not disclose the details of the training or any other confidential/proprietary information of her employer. *Id*. at

647-48. Hence, the *Light* court concluded that because there was no return promise from Light which the covenant could possibly be "designed to enforce," the covenant was unenforceable as a matter of law. *Id*; *but see, Rako v. Tifco Indus., Inc.*, 2002 Tex. App. LEXIS 5114, at *7 (Tex. App. July 18, 2002) (because the employee had signed a separate agreement not to divulge any confidential information of his employer, the court found the covenant akin to an enforceable confidentiality agreement, pursuant to which the employee could not transfer or disclose any of the employer's confidential or proprietary information).

As in *Light*, in the present case, the Agreement does not separately prohibit Defendant's disclosure of PMD's purported proprietary information. *See* Ex. A. Though Defendant agreed to the terms of the Agreement, he never specifically promised not to disclose the confidential or proprietary information that he obtained while serving as the Austin, Texas PMD licensee. Further, should Plaintiff attempt to argue that the Court should consider the Non-Compete "ancillary" to the Agreement, it would negate its previous argument that PMD had not intended for new PMD licensees to sign the Agreement separately from the Non-Compete. Thus, because the Non-Compete is not designed to protect any return promise by Defendant, it is not ancillary to any underlying contractual obligation, and is, therefore, unenforceable under Texas law.

### c. Whether Texas Has a Materially Greater Interest than Ohio

In *Power Marketing Direct v. Bryce Ball*, Case No. C2-03-1001 (S.D. Ohio June 28, 2004) (Marbley, J.) (unpublished) (hereinafter, "Ball"), this Court previously considered whether Ohio or California law had a more material interest in the parties' contract dispute. *Ball* involved similar facts to the instant case. *Id*. In August 2001, Defendants, residents of California, signed the PMD Agreement and became the exclusive PMD dealer in Orange County, California. *Id* at *2. In 2002,

PMD filed suit against defendants, claiming that they had breached the Agreement, violated the UTSA, and tortiously interfered with PMD's contractual and business relations. *Id*. In considering the validity of the Non-Compete, the Court determined that California had a materially greater interest in the litigation than Ohio. *See id*. at 7. In comparing the interests of the two states, the *Ball* court explained,

> The subject matter of the Agreement is a set of business methods for operating and running a furniture sales and warehousing business. Defendants utilized the business methods in California. Defendant's warehouse was located in California. Defendants were California residents. As for Ohio's contacts, Plaintiff was an Ohio corporation and Defendants did telephone Plaintiff in Ohio to place orders for furniture. The furniture, however, was shipped directly to Defendant from the vendors. Furthermore, Plaintiff was doing business in California and had an agent located there. Hence, the Court finds that California has a materially greater interest in the Agreement between Plaintiff and Defendant.

*Id*. at 7-8.

*Ball* is nearly identical to the case at issue except that there, defendants, Bryce Ball, and his associates, were PMD's exclusive licensees in Orange County, California, whereas, in the instant case, Defendant is PMD's exclusive licensee in Austin, Texas. Accordingly, the Court finds that just as California bore a more material interest in the dispute in *Ball*, Texas bears a more material relationship to the parties' dispute in this case. Defendant utilized the subject matter of the Agreement in Texas. Defendant's warehouse was located in Texas. Defendant is a Texas resident. Finally, though Plaintiff is an Ohio corporation, it did business in Texas, and had an agent located there.

As set forth above, the Non-Compete was not ancillary to the parties' Agreement, and is, therefore, unenforceable under Texas law. Because the Court finds that Texas has a materially greater interest in the litigation, the Court deems the Non-Compete unenforceable and **GRANTS**

Defendant's Motion to Dismiss Count One of Plaintiff's complaint.

### B. Collateral Estoppel

Defendant asserts that Plaintiff is collaterally estopped from re-litigating its UTSA and tortious interference claims (Counts Two and Three) because this Court previously deemed both claims meritless in *Ball*. "A federal court sitting in diversity looks to federal law on collateral estoppel to determine any preclusive effect of a prior federal judgment in a diversity action." *Tri-Med Fin. Co. v. National Century Fin. Enters.*, 2000 U.S. App. LEXIS 3659, *29 (6th Cir. Mar. 6, 2000) (quoting *J.Z.G. Resources, Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 213-14 (6th Cir. 1996)). Under federal law, four elements must be met for issue preclusion to apply:

> (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;
>
> (2) determination of the issue must have been necessary to the outcome of the prior proceeding;
>
> (3) the prior proceeding must have resulted in a final judgment on the merits;
>
> (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*NAACP, Detroit Branch v. Detroit Police Officers Assoc.*, 821 F.2d 328, 330 (6th Cir. 1987); *see also, McAdoo v. Dallas Corp.*, 932 F.2d 522 (6th Cir. 1991); *Aircraft Banking Sys. v. Local 856, UAW*, 97 F.3d 155, 161 (6th Cir. 1991) (affirming the use of defensive collateral estoppel and holding that the doctrine would bar re-litigation of issues where, *inter alia*, "the party against whom estoppel is sought. . . had a full and fair opportunity to litigate the issue in the prior proceeding."). Further, defensive collateral estoppel does not require mutuality of the parties. *See NAACP*, 821 F.2d at 330 (requiring only that the party against whom "estoppel is sought must have had a full and

fair opportunity to litigate the issue in the prior proceeding"); *see also, Blonder-Tongue Labs. v. Univ. of Ill. Found.*, 402 U.S. 313, 328-30 (1971) (explaining that the focus should not be on mutuality but on whether the party against whom collateral is estoppel is asserted had a fair and full opportunity to litigate the issue previously).

Applying the above factors, the Court finds collateral estoppel appropriate in the instant case. First, the claims in this case are identical to those at issue in *Ball*. Plaintiff asserts that Defendant violated the USTA by using the company's proprietary information for his own benefit and claims that Defendant tortiously and intentionally interfered with PMD's existing contractual relationships by soliciting other PMD dealers to terminate their agreements with the company. Plaintiff made the same allegations against defendants in *Ball*, the only difference being that in this case, Plaintiff added that, "*upon information and belief,*" Defendant solicited furniture and bedding vendors to terminate their relationship with PMD. Second, because the USTA and tortious interference constituted two of the three counts at issue in *Ball*, the determination of the claims was necessary to the outcome of the proceeding. Third, both the USTA claims and the tortious interference claims were actually litigated and dismissed in *Ball*, resulting in a final judgment on the merits. The *Ball* court dismissed PMD's USTA claims because even assuming *arguendo* that PMD's complaint identified information disclosed to defendant that could be classified as a "trade secret" and that PMD took "reasonable efforts" to maintain the secrecy of its proprietary information, PMD's complaint still "fail[ed] to allege any facts supporting improper use of the alleged trade secrets by Defendants after termination of the Agreement." *Id*. at *10-11. Moreover, the *Ball* court dismissed PMD's tortious interference claims because the claims were predicated on the Non-Compete, which the court had already deemed invalid under California law. Finally, there is no evidence in the

record that PMD was not give a full and fair opportunity to litigate these claims.  Thus, declining to religitate issues previously decided in related litigation, this Court **GRANTS** Defendant's Motion to Dismiss Counts Two and Three of Plaintiff's complaint.

### V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss.  Counts One, Two and Three are hereby dismissed, with prejudice.

**IT IS SO ORDERED**.


      s/Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: September 6, 2006**